UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA FEDIE,

      Plaintiff,

v.                                                                              CIVIL NO. 09-10417
                                                               HON. LAWRENCE P. ZATKOFF

LIVINGSTON COUNTY
and JOEL ASH,

      Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on June 4, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendants' motion for summary judgment [dkt 36]. The parties have fully briefed the motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1 (e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons, Defendants' motion is DENIED IN PART and GRANTED IN PART.

## II. BACKGROUND

On February 3, 2007, at approximately 4:30 a.m., Plaintiff received a phone call from her son asking her to pick him up from a friend's house. Plaintiff maintains that her daughter drove Plaintiff to the neighborhood in which the son was located. Due to darkness, the two women had

difficulty ascertaining addresses so they pulled in and out of several driveways in search of the proper address. Plaintiff's car ultimately pulled into Defendant Officer Joel Ash's ("Ash") driveway—the driveway next to the correct house—and Plaintiff's daughter went in search of her brother. Meanwhile, Plaintiff avers that she moved from the passenger to the driver seat. Approximately two-to-three hours prior to this, Plaintiff had ingested approximately two prescription pain killers called "Norco." Approximately twenty-four hours prior to that, Plaintiff had ingested a quarter gram of cocaine.

Ash states that he had just gotten out of bed that morning and, while preparing for duty, he noticed Plaintiff's car pulling in and out of his driveway. Based on the time of morning and his unfamiliarity with the vehicle, Ash claims that he became suspicious that criminal activity was afoot and felt threatened that somebody had sought him out to harm him or his family based on his status as a police officer. Ash dressed himself in sweat pants and a jacket, armed himself with a pistol, and walked outside demanding to know why Plaintiff was parked in his driveway. Plaintiff informed Ash that she was looking for her underage intoxicated son. Ash contends that he became even more concerned for his safety upon learning that her intoxicated son was on foot in the vicinity because he did not know whether the son posed a threat to his safety. Ash contends that after detecting a strong odor of alcohol emanating from Plaintiff, he identified himself as a police officer and demanded that Plaintiff surrender her driver's license and car keys, suspecting that Plaintiff was involved in criminal activities and under the influence of alcohol or drugs. Plaintiff shoved her keys into her groin area.

The sequence of the next series of events remains unclear. Ash contends that he retrieved Plaintiff's keys, walked into his house to call "911", and asked Central Dispatch to run Plaintiff's

2

diver's license information through the Law Enforcement Information Network, which disclosed that Plaintiff was on bond conditional release. Ash states that when he returned to monitor Plaintiff, she had exited her vehicle, stating that she had to "piss", and he told Plaintiff not to urinate on his lawn. Ash contends that Plaintiff then engaged him in a physical altercation. Ash claims that he gave Plaintiff several verbal commands to stop fighting and resisting and to get back in her vehicle. During the altercation, Ash avers that Plaintiff attempted to break his grasp and punch, push, and shove him. Ash states that he restrained Plaintiff by grabbing onto her shoulder and holding her against the car. At one point, Ash contends that Plaintiff attempted to crawl up her windshield, and that she assumed a position that caused Ash to believe she planned to kick him. Accordingly, Ash states that he removed Plaintiff to the ground until she calmed down and then allowed her to enter her vehicle. At this time, Ash made a second "911" call, and Deputy Richard Rodden soon arrived at the scene.

Plaintiff contends that after she shoved her keys into her groin area, Ash reached between her legs, grabbed her keys, and went into his house. Upon returning, Plaintiff maintains that Ash grabbed her by the hood of her sweatshirt and yanked her out of the vehicle. Plaintiff claims that Ash then put his hand around her neck and slammed her head into the hood of her vehicle with such force that she "saw stars." According to Plaintiff, Ash then threw her face-first to the ground, jabbed his left knee into her lower back, and ground his right knee between her shoulder blades. Plaintiff avers that Ash continued to shove her face into the snow so that she could not breathe and pounded her wrist against the ground while Plaintiff complained that she had neck injuries and a broken rib. Plaintiff states that, out of fear for her life, she managed to "wiggle free" from Ash and attempted to get to her vehicle before Ash grabbed her by her pants and shirt and smashed her head into the

3

passenger door. Plaintiff claims that she was again able to break free from Ash's grip, that she entered her vehicle, and that she locked her arms around the steering wheel until Rodden arrived.

Upon arriving at the scene, Rodden was informed of the situation by Ash, and Rodden ordered Plaintiff to exit the vehicle, which Plaintiff did. Rodden later stated that, at that time, Plaintiff did not pose any threat to his or Ash's safety. Plaintiff was arrested for suspicion of driving a motor vehicle under the influence of alcohol or narcotics and resisting arrest.[1] Plaintiff contends that after she was handcuffed, Ash escorted her to Rodden's patrol vehicle and continued roughing her up. Ash avers that Rodden handcuffed Plaintiff, and that Plaintiff was uncooperative, refused to place her hands behind her back, and refused to follow the officers' orders.

Rodden then transported Plaintiff to a hospital to undergo chemical and blood tests. Rodden made observations leading him to believe that Plaintiff was under the influence of controlled substances, including her glassy eyes, slow responses to verbal commands, mood swings, use of profanity, disrespect to the officers, and her two preliminary blood-alcohol test measurements of .020 and .021. Plaintiff maintains that a toxicology report ultimately confirmed that she had not consumed any alcohol that night. Plaintiff informed Rodden that Ash had struck her in the face and assaulted her. However, Rodden inspected Plaintiff and stated that he saw nothing that would lead him to believe that she had been struck in the face, saw no signs of redness, bruising, or swelling, and did not note any other signs of injury to Plaintiff. As a result of the encounter, Plaintiff received medical treatment for injuries to her neck and back, a broken rib, and a ruptured eardrum, and she claims to suffer from constant pain for which she now requires around-the-clock medication. On the date of the above incident, Ash was employed as a police officer for Defendant Livingston

---

[1] Plaintiff was acquitted of two counts of resisting arrest.

County ("the County").

Plaintiff has alleged claims under 42 U.S.C § 1983 against Ash for excessive force, and against the County for municipal liability based on its alleged failure to train and supervise its employees.

## III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

A. **FOURTH AMENDMENT: EXCESSIVE FORCE**

The Fourth Amendment protects individuals from excessive force by law-enforcement personnel. *Watkins v. City of Southfield*, 221 F.3d 883, 887 (6th Cir. 2000). The Court reviews

5

claims of excessive force under a standard of reasonableness. *Saucier v. Katz*, 533 U.S. 194, 209 (2001). The Court accordingly views the use of force from the perspective of a reasonable law-enforcement officer on the scene rather than retrospectively. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The analysis is to be conducted under the totality of the circumstances and without regard to intentions or motivations. *Id.* at 397. The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The Court's analysis must "embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

When resolving issues of excessive force, the Court must "carefully balance the nature of the intrusion on the [individual's] Fourth Amendment rights against 'the countervailing governmental interests at stake.'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Whether law-enforcement officials employed the least forceful alternative is not determinative in excessive-force claims. *See, e.g.*, *Harrell v. Purcell*, 236 F. Supp. 2d 526, 532 (M.D.N.C. 2002). Accordingly, "not every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

In their present motion, Defendants argue that summary judgment should be granted with respect to Plaintiff's claims against Ash because Plaintiff, who was "actually drugged-up" and suspected of being intoxicated, drove into Ash's driveway at 4:30 a.m., engaged Ash in a physical

altercation, verbally and non-verbally threatened Ash, refused to comply with his orders, and generally exhibited erratic and combative behavior. In her response, Plaintiff disputes that she engaged Ash in a physical altercation, threatened Ash, refused to comply with his orders, or was generally erratic and combative. Specifically, Plaintiff claims that she was sitting passively in her vehicle when Ash, without provocation, yanked her out of the vehicle by her clothing, slammed her against the vehicle and then onto the ground, drove his knees into her back, shoved her face into the snow, and slammed her into the vehicle once more. In their reply brief, Defendants concede that Plaintiff has raised genuine issues of material fact regarding whether Ash used excessive force in effectuating Plaintiff's arrest.

Drawing all factual inferences in Plaintiff's favor, the Court agrees with both Plaintiff and Defendants that genuine issues of material fact exist with respect to whether Ash used excessive force in arresting Plaintiff. Considering Plaintiff's version of the facts, which Defendants concede are sufficient to survive their motion for summary judgment, the Court finds that Defendants have failed to meet their burden to demonstrate that, as a matter of law, Ash's conduct in arresting Plaintiff was reasonable under the circumstances.

**B.    QUALIFIED IMMUNITY**

"Under the doctrine of qualified immunity, governmental officials, including police officers, will not be held liable on a plaintiff's claim for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights which the reasonable officer in the defendants' position would have known." *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether a defendant is entitled to qualified immunity, the Sixth Circuit has adopted a three-step inquiry: "(1) whether the

7

facts taken in the light most favorable to plaintiff could establish a constitutional violation; (2) whether the right was 'a clearly established' right of which any reasonable officer could have known; and (3) whether the official's actions were objectively unreasonable in light of that clearly established right." *Abel v. Harp*, 278 Fed. Appx. 642, 649 (6th Cir. 2008) (quoting *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002)).

### 1. Constitutional Violation

As discussed in Part IV(A), *supra*, the facts taken in the light most favorable to Plaintiff could establish that Ash violated the Fourth Amendment by using excessive force in effectuating Plaintiff's arrest.

### 2. Clearly Established

Whether a right is clearly established must be analyzed "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.'" *Id*. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "As a general matter, it is clearly established that a suspect possesses a right to be free from the use of excessive force." *Abel*, 278 Fed. Appx. at 651 (citing *Graham v. Connor*, 490 U.S. at 399)).

Under Plaintiff's version of the events, which Defendants concede are sufficient to raise genuine issues of material fact for trial, Ash had reason to know at a more particularized level that the conduct he allegedly engaged in while apprehending and arresting Plaintiff was unlawful. According to Plaintiff, she was sitting passively in her vehicle when Ash yanked her out of the

vehicle by grabbing her clothing, slammed her into the vehicle, slammed her onto the ground, drove his knees into her back, pushed her face in the snow, and slammed her against the vehicle once more. Plaintiff attempted to break free from Ash, but Plaintiff alleges that this was for the sole purpose of self-defense. *See Abel*, 278 Fed. Appx. at 651-52 (the defendant had reason to know he was violating a clearly established right while arresting the plaintiff where the plaintiff alleged that he assumed a primarily passive position and used force against the defendant only out of self defense).

### 3. Objectively Unreasonable

Next, the Court must determine "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional right[]." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). In excessive-force cases, "[a]n officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether the particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205.

Here, Plaintiff's version of the facts, which Defendants concede are sufficient to raise genuine issues of material fact for trial, indicate no mistake on the part of Ash in terms of what the law requires. According to Plaintiff, Ash applied excessive force to Plaintiff while knowing of her passivity. *See Abel*, 278 Fed. Appx. at 652 (the defendant's conduct in arresting the plaintiff was objectively unreasonable where the plaintiff alleged that he assumed a primarily passive position, which the defendant was alleged to have been aware of at the time the defendant applied force). In light of Ash's alleged knowledge, the Court concludes that genuine issues of material fact exist with

9

respect to whether Ash's actions were objectively unreasonable under the circumstances.

　　　　**4.　　Conclusion**

Due to the presence of genuine issues of material fact, the Court finds that Ash is not entitled to qualified immunity for purposes of the present motion. Accordingly, Defendants' motion for summary judgment is denied with respect to Plaintiff's claims against Ash.

**C.　　MUNICIPAL LIABILITY**

Generally, a municipality cannot be held liable under 42 U.S.C. § 1983 on the theory of *respondeat superior*. Municipal liability lies only when injuries inflicted are done pursuant to the municipality's policy or custom. *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In order to state a claim under the theory of municipal liability, a plaintiff must "identify the policy, connect the policy to the City itself and show that a particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)**.**

　　　　**1.　　Failure to Train**

"The County is liable under § 1983 for failure to train if the Plaintiff can prove three elements: (1) 'that a training program is inadequate to the tasks that the officers must perform'; (2) 'that the inadequacy is the result of the [County]'s deliberate indifference'; and (3) 'that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury.'" *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (citing *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989))). "To show deliberate indifference, Plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Plinton*, 540 F.3d at 464 (quoting *Fisher v. Harden*,

398 F.3d 837, 849 (6th Cir. 2005)). "In the alternative, 'a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability.'" *Plinton*, 540 F.3d at 464 (quoting *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997)).

Plaintiff argues that the County failed to train its officers as to the proper use of force to apply against a citizen during an arrest. Specifically, Plaintiff notes that although Ash attended a pressure-point control tactics course during his employment with the County, he is unfamiliar with the levels of resistancy by a citizen, and that Ash was unable during his deposition to define the following terms: psychological intimidation, passive or defensive resistance, and active aggression. However, the Court finds that Plaintiff has failed to establish that the County was deliberately indifferent in administering its training program. Plaintiff has alleged no prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse. Additionally, Plaintiff has not shown that the County failed to train its officers regarding the force to be applied against a citizen during an arrest. Plaintiff admits that the County trains its officers regarding the appropriate level of force to be used during arrests through a "pressure point control tactics course." The fact that one officer may have acted contrary to the training he received, or was unable to recite the definitions of various terms, is insufficient to demonstrate that the County was deliberately indifferent in administering officer training.

### 2. Failure to Supervise

A municipality may be liable for failing to supervise its officers if it can be shown that such failure was a deliberate or conscious choice by the municipality. *Kammeyer v. City of Sharonville*,

No. 01-00649, 2006 U.S. Dist. LEXIS 24058, at *33–34 (S.D. Ohio Apr. 26, 2006) (citing *City of Canton*, 489 U.S. at 389)). "Determining whether deliberate indifference is present in failure to train or supervise cases involves applying an objective rather than subjective standard." *Kammeyer*, 2006 U.S. Dist. LEXIS 24058, at *34 (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1970)).

Plaintiff argues that the County is liable under a failure to supervise theory because it has a longstanding custom, procedure, or *de facto* policy of failing to supervise officers at the time of incidents. Specifically, Plaintiff contends that the County does not conduct performance evaluations on its police officers, nor does it monitor officers' conduct, noting that Ash and Rodden testified that they have never received a formal or informal performance evaluation throughout their employment with the County.

Once more, the Court finds that Plaintiff has not demonstrated deliberate indifference on the part of the County. First, Plaintiff has failed to show that, based on the experiences of two officers over an unspecified period of time, the County has a policy of failing to supervise its employees. Second, the Court finds that *Kammeyer*, the sole case upon which Plaintiff relies, is distinguishable from the facts of this case. In *Kammeyer*, the court found genuine issues of material fact as to supervisor liability where a municipality failed to review or discipline an officer during his thirty-two years of employment despite written complaints by citizens that should have put the municipality on notice and reports from an entire command staff expressing their dissatisfaction with the officer's job performance. *Kammeyer*, 2006 U.S. Dist. LEXIS 24058, at *34-35. In contrast, Plaintiff offers no evidence supporting the proposition that the County was put on notice of Ash's alleged propensity to use excessive force and failed to respond accordingly. Plaintiff does not even offer evidence of a single complaint having been filed against Ash prior to the incident in question.

12

### 3. Conclusion

Therefore, the Court finds that Plaintiff has failed to demonstrate the existence of a genuine issue of material fact regarding her claim for municipal liability. Accordingly, the Court hereby grants Defendants' motion for summary judgment with respect to Plaintiff's claims against the County.

## V. CONCLUSION

Accordingly, for the above stated reasons, IT IS HEREBY ORDERED that Defendants' motion for summary judgment [dkt 36] is DENIED IN PART and GRANTED IN PART.

IT IS SO ORDERED.


                                      S/Lawrence P. Zatkoff
                                      LAWRENCE P. ZATKOFF
                                      UNITED STATES DISTRICT JUDGE

Dated: June 4, 2010

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 4, 2010.

                                      S/Marie E. Verlinde
                                      Case Manager
                                      (810) 984-3290